This is a video of the Comptoir des Indes Inc.     in the U.S. in the United States. This is a video of the Comptoir des Indes Inc.   This is a video of the Comptoir des Indes Inc.  in the United States. This is a video of the Comptoir des Indes Inc.  This is a video of the Comptoir des Indes Inc. in the United States. All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Be seated, please. Good morning. We have four argued cases today. The first of these is number 151375, Halo Creative and Design versus Comptoir Industries. Mr. Horwitz. Good morning, your honors. Gary Horwitz on behalf of the courts. May it please the court. Counsel. After diligent research by both parties, this is the only case that we have identified in all of U.S. history where a U.S. district court has abdicated jurisdiction over U.S. patents and told the plaintiff that they should go and enforce those patents in a different country. What was the evidence that the district court relied on in making this historical determination? Well, the only evidence that was presented in defendant's motion on the adequacy of the Canadian forum is a declaration by the defendant's U.S. attorney that says, you know, I went on the Internet and I found this website of the Federal Court of Canada, which says that that court has jurisdiction over patent, trademark, and copyright claims. I'm a little unclear as to what happened here, and I'm not sure that it's clear from the complaint what happened. What is the connection with Canada? Were these designs created in Canada of the infringing, allegedly infringing product, and then shipped to the Far East where the products were made? What do we know about this? I think we know very little about that. The designs, as far as we're concerned, were originally created in Hong Kong where our client created these original designs. Your client, but what about the accused infringer's design? We know very little about where those designs came from. We assume that the direction to copy the original designs from our client was probably based in Canada. The person who was in Canada made the direction to copy those pieces. But the record doesn't show where the designs were created. I do not believe that the record shows where the designs were created. So, you know, that website is referring to Canadian patents and Canadian trademarks and Canadian copyright claims. But the main issue in this case is, in every other case, including the Seventh Circuit cases that defendants rely on, the defendants who moved for forum nonconvenience dismissal provided affidavits by legal experts from the target forum. In the Stroytelstow, Bulgaria case, the party offered competing testimony of experts in Bulgarian law. Kamo v. Hilram, the defendants submitted an affidavit of Vernon Kassin, an expert in Saudi law. And in Mercier v. Sheraton, the First Circuit held that an affidavit submitted by a Turkish attorney and law professor was still not sufficient to prove that Turkey was an inadequate forum because the affidavit failed to address key legal issues. The plaintiff there didn't offer a competing affidavit, but the defendant's motion was still denied because the defendant bears the burden of proof on forum nonconvenience cases. And all we have here is a webpage from the Federal Court of Canada. The district court abused... In addition to your patent claims, you have some other claims too, right? You have copyright and trademark claims. That's correct. I mean, is there any question about whether Canada can hear those type of claims and grant you relief on those type of claims? And would that be overlapping with your patent claims? So, first of all, they would not be overlapping with the patent claims because the two patents that are at issue in this case cover different furniture designs than the ones that are covered by the trademark and the ones that are covered by the several copyrights. Secondly, to go back to your earlier question, the trademark simply... Well, the trademark and the patent claims we don't believe can be adjudicated in a Canadian court. I mean, we've had... In fact, there was just a case that came down from the Southern District of New York yesterday. See, the issue is the defendants will very likely claim that they're... So the only claim that you think potentially could be litigated in the Canadian court is maybe the copyright claim? Yes, if any claim could possibly be litigated in Canadian court, it would be the copyright claim. Wait, I don't understand how the copyright claim could be litigated in Canada if there was no connection between the infringing acts in Canada. At least under U.S. law, there's a predicate act doctrine in copyright which suggests that sometimes a foreign infringement may be the subject of a U.S. suit, but there has to be a predicate act in the United States. What is the predicate act here in Canada? That's the problem I'm having. I agree with you. I believe defendants would say the predicate act was their... You know, the defendant's CEOs or whichever individual said, hey, we like these furniture pieces. Maybe someone over there in Asia can make some identical furniture pieces and we can sell them at a cheaper value. But the trouble is we don't know that that happened. That's exactly correct. We don't know that that happened. Now, but theoretically, under the Berne Convention, there is some arguable claim that Canada could hear these copyright issues. But, of course, we believe there's still not enough evidence on that point because they never submitted, as I said, an affidavit of a legal expert. We have no actual hard evidence that any court in Canada has ever heard a case involving furniture design copyrights. We just don't know if that has ever happened before. And so given all these other cases where legal experts were required and there was evidence, there was evidence in these other cases where a legal expert said, yes, I've seen these types of cases. This is how the court would handle it. In this case, we have nothing other than the U.S. attorney making arguments as to how Canadian law would apply. Is there any question of personal jurisdiction here? In this case? Yeah, did the defendant have sufficient contacts? Yes, of course, because they've sold products into the stream of commerce that landed all throughout the United States. So we believe there's very clear jurisdiction against both the defendants in this case. Did the sales take place in the northern district of Illinois? That's correct, the northern district. And I'd like to point out, so the district court abused its discretion by failing to hold the defendants to this burden of proof. I mean, first of all, the district court artificially lowered the standards. The general rule is that the vexation and oppression of a defendant must be out of all proportion to plaintiff's convenience or burden. But the district court here just said, oh, the vexation and the oppression must outweigh. He lowered it to a preponderance standard, which is simply not true. He also said the public interest factors do not compel denial of the motion. But, of course, it's defendant's burden to show that the factors actually lean towards granting the motion because an equal balance of the factors will always favor the plaintiff's foreign choice. And they like to say that this is an isolated turn of phrase. Well, but the opinion is replete with uncertainty. They say perhaps Canada could apply the laws. The district court never actually found that the Canadian court would actually apply U.S. law. He just said, oh, it's possible that maybe Canada could apply those laws. That falls far short of meeting the burden. And on top of that, there's all this other uncertainty. Well, familiarity with the law would not pose a problem if Canada applies its own law. And the possibility that it doesn't apply its own law, I mean, with all these ifs and possibles and probabilities and perhapses, there's just no way that you can ever find there's an actual proof here that meets the essential conditions for dismissal, a drastic remedy to dismiss a complaint under this forum nonconvenience doctrine. And we have numerous other cases that have identical factual scenarios. The Jose Armando Bermudez case from the Southern District of New York, all of the parties in that case were foreign. All of the parties were foreign, and they asserted trademark and copyright claims. And yet in many of those cases, just like Greenlight Capital, Motown Records, many of these cases the defendants said, hey, you know, the Dominican Republic, they have trademark and copyright laws. Or, hey, you know, Israel, they have trademark and copyright laws. But in each of those cases, just saying that was not enough. All of those courts held you haven't proven anything that they actually can hear U.S. claims. There's absolutely no way that the Canadian court can hear U.S. patent claims and U.S. trademark claims. And most of the authorities are pretty clear on that avenue. The district court also abused its discretion by putting this erroneous view of the proportionality requirement. Again, the oppression and the vexation must be out of all proportion to plaintiff's convenience or burden. And the defendants never even attempted to claim oppression or vexation. They admitted in their reply brief below that they refrained from using terms as harsh as oppression and vexation, and that they just said, oh, litigating in Montreal would be far more convenient for us, and traveling to Chicago and translating documents would be unnecessary expenses. The forum nonconvenience doctrine does not exist to enable a defendant to avoid all costs associated with defending itself. And on this same point, the district court didn't even find oppression or vexation. The plaintiffs have similar costs. He just said that the plaintiffs would have similar costs in either forum, so the defendant's costs would be higher, obviously, if they had to travel anywhere other than their home forum. That's not an appropriate comparison. I mean, the defendant's argument is now going to say, well, the oppression and vexation is not an absolute requirement because U.S. forum is not actually convenient to them, you know, because they're traveling all the way from Asia. But there are no cases that support this claim that you can entirely disregard a plaintiff's convenience, or even that you're supposed to consider it. Is this forum actually convenient to the plaintiff? Plaintiffs get a presumption of convenience because plaintiffs do not typically file inconvenient lawsuits. You can overcome that presumption with vexation and oppression, but that didn't happen here. And we also have several cases that say defendants cannot rely on any inconvenience to the plaintiff and witnesses whose expenses plaintiffs will bear. And another case is nothing prevents a plaintiff from burdening itself with an inconvenient forum. So in the end, what we're left with is the defendants are trying to create a new rule. A foreign infringer who's based near the United States can get out of jail free with the forum nonconvenience doctrine as long as the foreign defendant is close to the United States and the foreign plaintiff is farther from the United States. And this rule would destroy the incentives for foreign companies to protect and enforce their intellectual property rights in the United States. For a company based in Asia, if they sell most of their products here in the U.S., it's completely reasonable for them to obtain patents here, obtain copyright and trademark protection in this country, and bring suit in this country if someone is violating and infringing those property rights. And it would be wrong as a policy matter. So, for example, let's say Samsung, an Asian company, sued a Canadian company like Research in Motion for patent infringement in the eastern district of Texas. You know, defendants proposed rule, and the district court's reasoning in this case would say, you know, Samsung, you're foreclosed from suing in the United States because you also have Canadian patents. You can just go sue them in Canada because, you know, it's not really convenient for Research in Motion to have to travel all the way down to Texas to defend itself. That's essentially what's going on in this case. And this court should not adopt defendants' new rule. It should recognize these words have meaning. The forum nonconvenience requirements of oppression and vexation out of all proportion to a plaintiff's convenience or burden, they cannot just be disregarded entirely just because a plaintiff is foreign and happens to reside farther away from the United States than the defendant. The district court also abused its discretion by finding an unreasonable balance of the factors. The defendants concede that many of the factors do not favor them. And so the only issues are the ease of access. So they complain about transporting documents and the cost of translation. Documents are not even transported anymore. They're just scanned and produced electronically. And 18 months before this, very opinion, the very same district court recognized, you know, the ease of access to hard drive and electronic data storage makes it pretty easy for that Chinese entity to produce its documents here in Illinois. The other complaint they have is the cost of obtaining attendance of willing witnesses. And it's really just not that difficult to travel from Canada to Illinois. Many cases recognize it's a very short journey compared to what the burden the plaintiffs are undertaking. I see that I'm in my time now for my rebuttal, so I will yield. Okay, thank you. Mr. Bagley? Good morning, Your Honor. May it please the Court, the case before you now is one- Let me tell you what my problem is. You focus on the copyright claim potentially being something that could be litigated in Canada. I'm having difficulty in seeing that when I don't see that you've established any connection between the copyright infringement and anything that happened in Canada. There's no showing that the design was made in Canada. Certainly the furniture wasn't made in Canada. And the United States wouldn't enforce a copyright claim unless there was some connection with the United States, a predicate act in the United States. And I don't see the basis for assuming that Canada would behave differently. What's your response to that? Well, Your Honor, I believe that, first of all, that's not necessarily something that came up at the trial court level. But I think the presumption and the entirely reasonable presumption is that CDI is, of course, based in Montreal. They came up with their own furniture designs, which are now accused to be- But we don't know where they came up with the designs. Well, if we're asking about the power- Correct. I mean, this record does not show where the designs were created. They do not show that they were created in Canada, correct? The record does not show that. I would agree with that. I would believe that- I believe they were. Honestly, looking at it reasonably, CDI is located in- Well, we have to go with what the record shows. So why is it that where no designs were created in Canada, where no infringement took place in Canada, where no manufacturing took place in Canada, what basis is there for believing that the Canadian courts would enforce a copyright claim involving infringement in the United States? Well, there's two issues there. First, I believe the Canadian courts would enforce- if they found an infringement, they would enforce it against a company that's within its own physical jurisdiction. Why? I mean, what's the basis for that? The United States wouldn't do that, right? If there was no connection between an infringement and the United States, no design, no infringement here, no manufacturing here, we wouldn't entertain a copyright claim, right? Well, if the copyright claim were against a United States company, speaking hypothetically, I suppose, if the United States company had a foreign designer come up with a copyright design and it was manufactured only outside the United States and sold only outside of the United States, I would still think the United States court would take jurisdiction. They would say we have inherent authority over the company's- What case suggests that? My reading of the U.S. cases is that you can't have a copyright infringement suit here under U.S. law unless there's a predicate act in the United States. Okay. Well, then that is your reading of the court. And I don't necessarily have an answer to that. Honestly, as we've gone through it, I think both parties have assumed that- Well, yes, that's the problem. You're asking us to assume that since you're a Canadian company, you created the designs in Canada, you maybe produced the furniture in Canada or something like that. But none of that is in the record. And it's your burden to show all of this to have the case dismissed. It's not your opponent's burden to rebut it. Certainly, that is the case. It is our burden. And you haven't shown anything that suggests the Canadian courts can hear any of these claims except conjecture. I do believe- We submitted a declaration by the CEO of CDI. And I'm just thinking of my own, going over what I know of the record. I believe it said that their employees are located in Montreal. Now, if their employees are located in Montreal, someone had to do this design and it wouldn't reasonably be an employee- It could have been in Asia, right? Because the furniture is manufactured in Asia, not in Canada. The record does show that, right? Yeah, I believe the record does show it was manufactured in Canada. I'm sorry, in Asia. But all of CDI's employees are in Montreal. And the predicate act would not have been a predicate act to instruct that these designs be manufactured. I believe that instruction would have necessarily had to come from Canada. Well, it might be, but there isn't anything in the record showing that anybody in Canada conveyed that instruction to somebody in Asia or certainly that any designs were created in Canada. We don't know. I will admit that the record did not get that specific as to who specifically, who in CDI, ordered that certain furniture designs, furniture orders be made. And I would only suggest that that is, yes, a very specific issue. But I think looking at it reasonably, it was someone who happened- It was someone who was employed by CDI. And that's a natural conclusion from the facts that are before the court. If CDI's employees are in Montreal, CDI's CEO is in Montreal, I believe that's also in the declaration, then some of those employees had to start this train going, had to make these orders, make these- How do we know that? I mean, couldn't the people in Asia come up with the designs? I think we know that by the fact that, you know, the way a modern company works, that if all your employees are in a certain place, a company doesn't do something without its employees, some of its employees ordering that to be done. Well, they could have traveled to Asia and worked on the design in Asia, right? I suppose they could have, but they would still be, you know, Canadian citizens. So if a Canadian citizen travels to Asia and meets with these people in Asia, and the Asian people say, look, we've got this great new design, why don't we implement it? And they agree, it's all done in Asia, and the Canadian citizen flies back. You think that that's just because it was a Canadian citizen involved in that discussion, it's enough to be sued in Canada? I would if it was the Canadian company that is the one who was benefiting from that. And what's your support for that? I do not have before me any specific support for that, I will admit that. And it was your burden to prove all of this, to get this case dismissed, and you don't have anything to tell us today for why that would be true. I believe it was our burden, and I believe we proved that CDI is a Canadian company headquartered in Canada, specifically in Montreal. And until I'm standing here before you, I sincerely thought that was enough. What case says that's enough? I'm not aware of a specific case that says that's enough. What case did you cite in your briefs to the district court that said it's enough? I don't recall what case we cited. No, I don't know that we cited one that said it was enough. I think the presumption was if you have a Canadian company, that the courts of Canada are going to have jurisdiction over it. And that's as far as the analysis went. And quite frankly, I didn't even realize that that might be a problem. And I didn't come up in any of the briefing to this court that that might be a problem. And I understand if you have a concern about it. And to that, I would simply say that the Canadian court would take the subject matter jurisdiction of the copyright. Do you have any dispute about personal jurisdiction here? Setting aside the CEO, I know you have a dispute about that. Do you have any dispute that the District of Illinois has personal jurisdiction over your law? Not over the company, we don't. The allegation was a stream of common theory. So we know that the federal court in Illinois can hear these claims. We have no doubt that the federal court in Illinois can adjudicate all of the claims brought by the plaintiff. At least as to the company. Yes, as to the company. You haven't told us one thing today that suggests the Canadian court can adjudicate any of those claims. I mean, how isn't that an abuse of discretion? When I looked at all the other case law, I don't ever recall seeing that this level of detail was required. What case law suggests that a defendant is entitled to be sued where it wants? The case law is the opposite. A plaintiff is normally entitled to sue where it wants as long as there's personal jurisdiction over the defendant. You seem to be espousing the exact opposite. I don't think I am. I think I'm asking the court to follow the doctrine of forum nonconvenience as it's laid out in some of these cases. Look, I can talk about... Which requires that the suit can be heard by another jurisdiction. It requires you to prove it. And you haven't established one single thing beyond the fact that you're a resident in that country. I don't know how to respond to that. As I saw this case coming in, I believe that that was enough. If you look at some of the other cases that have dismissed cases in favor of foreign forms for the forum nonconvenience, I think they've done so without having to prove it to this quite level of a predicate act in that country. We had the creative technologies case that sort of explained the whole reason why a foreign country would enforce a copyright of a citizen of a treaty member to that convention. Thank you. Do you have anything further? I do have a number of things further. One of the things that counsel was talking about here is the convenience, the relative convenience, of the two forums in terms of travel costs. HALO is suggesting that this court should compare the travel costs that HALO had to go to between Hong Kong and Chicago with the travel costs that CDI would have to go to between Montreal and Chicago. In terms of what this court is actually trying to decide, that simply wouldn't make any sense. Remember that you are comparing two potential trial venues, Chicago and Montreal. Therefore, the only thing that makes sense is a comparison of, say, HALO's travel costs between Hong Kong and Chicago with HALO's travel costs between Hong Kong and Montreal. As was said in the briefs, those are approximately the same. CDI's travel costs between Chicago and Montreal are real and significant and its travel costs if it's in Chicago are non-zero. Are they located in Montreal? They are located in the Montreal metro area, yes. So instead of driving, they have to fly from Montreal to Chicago. Which is how long of a flight and cost how much money? It's insignificant if you're talking about travel costs to go from Montreal to Chicago. It's like litigating a case in the eastern district of Texas when you're headquartered in Chicago or D.C. or Silicon Valley. It's probably less. It is probably less, but it is a real cost that weighs on one side of the issue that doesn't weigh on the other side. And so we're talking about travel costs, we're also talking about the costs of moving samples. And not only documents which can be scanned into electronic form and shared that way, we're talking about pieces of furniture here that are potentially shipped from Montreal to Chicago or staying in Montreal. And that's on the balance of the issues. Furniture shipped from Montreal? What evidence is there that any of this furniture ever was in Montreal? I mean the furniture is in Illinois already, isn't it? That's why you're being sued for infringement. You're selling furniture in Illinois that they claim violates their design policy. Right, no, I'm not talking about the furniture that's already in Illinois. I'm talking about what evidence is at the Montreal headquarters of CDI. But the record doesn't show anything about any furniture or potentially infringing furniture being in Montreal. It's shipped from the Far East to the United States, right? In the normal course of sales, yes, but in order to get it for a trial, Taylor's going to have to arrange for even its prototypes and things that were designed. And yes, I'm presuming that was happening in Montreal, which I think is a reasonable assumption. Are there any other questions from the court? No, thank you. Mr. Horowitz, you have three minutes if you need it. Thank you, Your Honors. First of all, just to say we agree with what you said, that there does not appear to be any proof of any predicate act in the record. And respectfully, we believe that Defendant's Counsel is employing the same conjecture that was employed in their original motion and in the District Court's opinion. Secondly, we agree that the furniture is not produced in Canada. As you've said, it's produced in the Far East and transported over here. As a third issue, Defendants raised the Creative Technologies case, and I'd just like to point out, in that case, both parties were based in Singapore. So, of course, the predicate act was in Singapore because all of the products that were manufactured in that case were manufactured in Singapore. The copyright infringement that was going on originated in Singapore in that case. So it made sense in that case to dismiss that one over to Singapore. And then finally, Defendants raised a point about also physical samples and prototypes. Again, this is very little on this in the record, but we just wanted to also point out, you know, how kind of ridiculous this argument is on its face because the Defendants travel into the United States multiple times each year. This is alleged in our complaint, and we serve them in Las Vegas at the Las Vegas Furniture Show. They travel voluntarily in the United States at least three times a year with dozens of furniture samples, like whole showrooms, hundreds of square feet of different pieces of furniture that they voluntarily bring into the United States to sell their products and to market them. And so then to say that one time bringing, you know, both of which are much farther than Chicago, than Montreal is from Chicago. So we just think that this argument about bringing furniture samples is a little bit belied by their own actions. So with that, if there aren't any other questions, I'm happy to yield. Okay. Thank you, Mr. Horowitz. Thank both counsel. The case is submitted.